# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY LEE MISKELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant.<br>_____/ | Case No. 1:16-cv-00105-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>**(Doc. 1)** |

On January 21, 2016, Plaintiff Jimmy Lee Miskell ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income. (Doc. 1.) Plaintiff filed his opening brief ("Plaintiff's Motion") on November 19, 2016, (Doc. 17), and Defendant filed their Cross-Motion for Summary Judgment ("Defendant's Motion") on December 16, 2016, (Doc. 18). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.[1]

For the reasons provided herein, the Court GRANTS Plaintiff's Motion, (Doc. 17), DENIES Defendant's Motion, (Doc. 18), REVERSES the final decision of the Commissioner, and REMANDS this matter for further proceedings.

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7 & 9.)

# I. BACKGROUND

The following includes the pertinent medical and procedural background for this matter. Plaintiff was born on July 11, 1963, and is currently 53 years old. (Administrative Record ("AR") 210.)

On May 3, 2013, Plaintiff filed his claims for disability insurance benefits and supplemental security income. (AR 163–65, 171–80.) In these claims, Plaintiff alleges that he became disabled on January 1, 2010. (AR 163 & 171.) Plaintiff stated that the following conditions limit his ability to work: chronic obstructive pulmonary disease, thyroid problems, and flat feet. (AR 213.) The Social Security Administration denied Plaintiff's claims initially on July 18, 2013, (AR 104–13), and again on reconsideration on October 21, 2013, (AR 115–26). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on December 2, 2013. (AR 127–28.)

On March 26, 2015, the ALJ held a hearing regarding Plaintiff's claims (the "Hearing"). (*See* AR 36–55.) Plaintiff was not represented by counsel at this Hearing. (*See* AR 38.)

During the Hearing, the ALJ stated the following:

> Okay, then what we'll probably do is [Plaintiff] went to one of our doctors back in July 2013. I'm going to send [Plaintiff] to another one simply so I can have some more updated records . . . for [Plaintiff]. All right, so we're going to send [Plaintiff] to an internal med guy, and we'll see if I can get a breathing test done on [Plaintiff], a pulmonary function, since that seems to be one of [Plaintiff's] big ones.

(AR 45–46.) Additionally, the ALJ noted the following at the conclusion of the Hearing:

> Okay, so what's going to happen now is [Plaintiff] should get an appointment in the mail to go see one of our doctors again, and then once I get the report back from that, then I'll take a look at that and decide what to do with [Plaintiff] as far as making a decision . . . .

(AR 54.)

Following the Hearing, Plaintiff underwent pulmonary testing at Valley Health Resources in Fresno, CA on April 24, 2015. (*See* AR 305–08.) The results of this additional test (the "April 2015 Test Results") provide "FEV1" values between 1.42 and 1.64. (AR 306.) The April 2015

2

Test Results also state that Plaintiff's "FEV1 is 42% [p]redicted" and his "[l]ung [a]ge is 99." (*Id.*)

On the "Interpretation" line, the April 2015 Test Results state the following: "No interpretation; Poor test quality!" (*Id.*) On the next line, the April 2015 Test Results provide the following in bold font: "Caution: Maneuvers Not Reproducible – Interpret With Care." (*Id.*)

In a decision dated June 19, 2015, the ALJ found that Plaintiff was not disabled. (AR 19–35.) In the decision, the ALJ conducted the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520. (*See* AR 23–30.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date." (AR 24.) At step two, the ALJ found that Plaintiff "has the following severe impairments: chronic obstructive pulmonary disease . . . with tobacco dependence." (*Id.*)

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (AR 25.) The ALJ noted the following as to the step-three determination:

> The impairments listed in Appendix 1, Subpart P, 20 [C.F.R.] Part 404 which are most nearly applicable to [Plaintiff's] medically determinable impairments, particularly Section 3.02 for chronic pulmonary insufficiency, have been reviewed and are not met or medically equaled under the facts of this case and will be discussed in greater detail in finding #5.

(*Id.*)

In the ALJ's "finding #5," the ALJ found that Plaintiff has the residual functional capacity ("RFC") "to perform light work as defined in 20 [C.F.R.] 404.1567(b) and 416.967(b)," subject to certain limitations, and that Plaintiff "must also avoid moderate exposure to dust, gases, and fumes." (*Id.*) In the course of the RFC analysis, the ALJ stated only the following regarding the April 2015 Test Results: "On April 24, 2014 [sic], a Pulmonary Function Test showed an FEV1 of 43 percent [sic], which placed the claimant in the moderate obstruction range." (AR 27.)

The ALJ did not reference the April 2015 Test Results at any other point in the ALJ's decision. (*See* AR 19–35.) The ALJ also did not discuss any other post-Hearing pulmonary tests―and, particularly, testing as to an "FEV1" value―in the decision. (*Id.*)

At step four of the sequential evaluation process, the ALJ determined that Plaintiff "is unable to perform any past relevant work." (AR 29.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.*) Ultimately, the ALJ determined that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (AR 30.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 16–18.) On November 17, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–4.)

Plaintiff then filed the Complaint in this Court on January 21, 2016. (Doc. 1.) Plaintiff filed Plaintiff's Motion on November 19, 2016, (Doc. 17), Defendant filed Defendant's Motion on December 16, 2016, (Doc. 18), and Plaintiff filed his reply in support of Plaintiff's Motion on January 3, 2017, (Doc. 19). As such, the briefing in this case is complete and this matter is ready for disposition.

## II. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of

4

eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"); *id.* § 416.920(a)(4) (same). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

## B. Scope of Review

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**III. DISCUSSION**

In Plaintiff's Motion, Plaintiff argues that the ALJ erred by (1) not fully developing the record prior to making the disability determination; and (2) ignoring issues regarding the validity of the April 2015 Test Results. (*See* Doc. 17 at 11–14.) The Court agrees with Plaintiff's positions.

"[T]he ALJ is not a mere umpire at" a social security proceeding and "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (alteration in original) (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). Indeed, "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). "This duty extends to the represented as well as to the unrepresented claimant." *Id.* (citing *Smolen*, 80 F.3d at 1288). However, where, as here, the claimant is unrepresented, (*see, e.g.*, AR 22), "the ALJ must be especially diligent in exploring for all the relevant facts," *Tonapetyan*, 242 F.3d at 1150 (citing *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)); *see also id.* ("The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992))).

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288); *see, e.g.*, *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." (citation omitted)); *see also Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) ("Some kinds of cases . . . do normally require a consultative examination, including those in which additional evidence needed is not contained in the records of the claimant's medical sources, and those involving an ambiguity or insufficiency in the evidence that must be resolved." (alterations omitted) (citations omitted)). "A specific finding of ambiguity or inadequacy is not

1 necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."
2 *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (citation omitted). "The ALJ may discharge
3 this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions
4 to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing
5 to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*,
6 161 F.3d 599, 602 (9th Cir. 1998) and *Smolen*, 80 F.3d at 1288).

7 In this case, the ALJ determined that the record was inadequate to allow for proper evaluation of the evidence when the ALJ explicitly delayed making the disability determination until after Plaintiff underwent additional pulmonary testing. (*See* AR 54 (providing the ALJ's statement at the end of the Hearing that Plaintiff "should get an appointment in the mail to go see one of our doctors again, and then once [the ALJ] get[s] the report back from that, then [the ALJ will] take a look at that and decide what to do with [Plaintiff] as far as making a decision"); *see also* AR 45–46 (providing the ALJ's statement at the Hearing that the ALJ was "going to send" Plaintiff for "a breathing test . . . , a pulmonary function, since that seems to be one of [Plaintiff's] big ones").) In other words, the ALJ recognized that the record triggered the ALJ's duty to conduct an additional inquiry to create a more developed record. (*See, e.g.*, AR 54); *cf. Moles v. Astrue*, No. CV–08–6054–ST, 2010 WL 1838923, at *7 (D. Or. Apr. 6, 2010) (finding that the ALJ had a "duty to fully and fairly develop the record" where the ALJ made "statements regarding the importance of receiving clarification from [a physician] and obtaining the records related to [a particular] claim").

21 However, the ALJ committed two discrete errors when utilizing the April 2015 Test Results in the decision. First, while the ALJ recognized that they had a duty to develop the record, the ALJ ignored the fact that the results of the additional test were unreliable on their face. As the ALJ identified that their duty to develop the record was triggered by an inadequate record, the ALJ had the duty to discharge this duty by requesting additional information that resolved the deficiencies in the record. *See, e.g.*, *Tonapetyan*, 242 F.3d at 1150 (noting that "the ALJ's duty to conduct an appropriate inquiry" is "trigger[ed]" where the ALJ, themselves, makes a "finding that the record is inadequate to allow for proper evaluation of the evidence"). Nonetheless, the April

1 | 2015 Test Results did not resolve these deficiencies. To the contrary, as noted on the face of the
2 | April 2015 Test Results, the medical provider declined to provide an interpretation of these
3 | results, noted that there was "[p]oor test quality!," and stated in bold that the results were "[n]ot
4 | [r]eproducible" and should be interpreted "[w]ith [c]are." (AR 306.) As the April 2015 Test
5 | Results provided substantial and explicit indicia of unreliability, these tests did not discharge the
6 | ALJ's duty to develop the record. *Cf. Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006)
7 | (finding that the ALJ erred where they had a duty to develop the record and made an inquiry on an
8 | issue, but "[n]o ALJ could reasonably believe that this single [inquiry] was adequate to elicit the
9 | sort of information necessary to fully and fairly develop the record and to properly protect [the
10 | claimant's] interests"). Instead, the ALJ's self-invoked duty to develop the record remained
11 | unfulfilled following the April 2015 Test Results. *See, e.g.*, *Hilliard v. Barnhart*, 442 F. Supp. 2d
12 | 813, 819 (N.D. Cal. 2006) ("Once the claimant has been recommended for a consultative
13 | examination, inconclusive examination results are not sufficient to meet the ALJ's duty to develop
14 | the record."); *see also Butts v. Colvin*, No. CV 12–4999 JCG, 2013 WL 865396, at *1 (C.D. Cal.
15 | Mar. 5, 2013) (finding that the ALJ erred when they noted that Plaintiff had additional medical
16 | records, but—while "an initial [unsuccessful] attempt to obtain" these records was made—the ALJ
17 | nonetheless made a disability determination without fully developing the administrative record
18 | with these additional documents); *cf. Mata v. Barnhart*, 152 F. App'x 626, 628 (9th Cir. 2005)
19 | (finding that the ALJ satisfied their duty to "fully and fairly develop the record" where the ALJ
20 | "conduct[ed] an appropriate inquiry" and "resolve[d] doubts regarding ambiguous evidence").
21 | The ALJ therefore committed error when they made a disability determination while the ALJ's
22 | duty to develop the record remained outstanding. *See, e.g.*, *Struck v. Astrue*, 247 F. App'x 84, at
23 | *1 (9th Cir. 2007) (finding that the ALJ committed error where the ALJ "concluded that
24 | [additional] records . . . were important to assessing [the claimant's] claim," but nonetheless made
25 | a disability determination without satisfying the ALJ's "duty to fully and fairly develop the
26 | record"); *Stinson v. Astrue*, No. 07–2773 JF, 2008 WL 4412260, at *5 (N.D. Cal. Sept. 25, 2008)
27 | (finding that the ALJ committed error where the ALJ failed to discharge their "heightened duty to
28 |

develop the record of a claimant proceeding without representation" and, instead, "relied on an incomplete record in making his determination").

Second, the ALJ committed error by relying on the April 2015 Test Results without addressing the equivocations provided on the face of these results. As noted by the Ninth Circuit, if an ALJ relies on certain medical evidence, they are "not free to ignore" the medical provider's "equivocations" regarding that evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150–51 (9th Cir. 2001). Yet, the ALJ did exactly that here. In particular, the ALJ described the April 2015 Test Results in the decision and relied on these results in making the disability determination―and specifically in the ALJ's step-three determination. (*See* AR 25–27.) However, the ALJ ignored the explicitly equivocal statements provided on the face of the April 2015 Test Results, (*see* AR 22–31), including that the medical provider declined to provide an interpretation of the results and the medical provider's statements that the results were based on a "[p]oor test quality!," "[n]ot [r]eproducible," and should be interpreted "[w]ith [c]are," (AR 306). The ALJ therefore erred by relying on the April 2015 Test Results without addressing the explicitly equivocal statements of the provider of these results. *See, e.g.*, *Tonapetyan*, 242 F.3d at 1150–51 (stating that, "[g]iven" the ALJ's "reliance" on a physician's testimony, "the ALJ was not free to ignore [the physician's] equivocations and his concern over the lack of a complete record upon which to assess" the claimant's "impairment"); *Labrown v. Astrue*, No. CV 12–0281–JPR, 2012 WL 5499985, at *6 (C.D. Cal. Nov. 13, 2012) (finding that the ALJ erred by relying on a physician's testimony in making the disability determination, while also ignoring the physician's numerous equivocal statements regarding his findings); *Tate v. Astrue*, No. CV 11–3213 CW, 2012 WL 1229886, at *6 (C.D. Cal. Apr. 11, 2012) (finding that the ALJ erred in relying on a physician's opinion, while ignoring the physician's equivocal statements); *Cf. Hilliard*, 442 F. Supp. 2d at 818 (stating that the ALJ's "reliance" on a physician's "conclusion" was "not warranted because―as even [the physician] himself recognized―[the physician] did not have sufficient information to make a diagnosis").

Defendant nonetheless argues that the ALJ's errors were harmless. (Doc. 18 at 7.) The Court disagrees. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in

the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 & n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004))). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive―'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

Here, Defendant argues that, "[e]ven if . . . the ALJ should have rejected the [April 2015 Test Results], any error is harmless because" the record includes results from other pre-Hearing tests that constitute sufficient "substantial evidence" to affirm the Defendant's final decision. (*Id.*) However, the ALJ―and not the Court―invoked the ALJ's duty to develop the record when the ALJ stated that they would not render a disability determination until after Plaintiff underwent additional tests. (*See* AR 54.) Stated differently, the ALJ determined that the record at the time of the Hearing was insufficient to make a disability determination. (*See id.*) In essence, Defendant thus requests that the Court supplant the ALJ's determination regarding the sufficiency of the available pre-Hearing record with its own judgment. The Court declines Defendant's request, as it is the ALJ's responsibility―and not that of the Court―to weigh the available evidence, *see, e.g.*,

11

*Kaneshiro v. Holmes & Narver, Inc.*, 60 F. App'x 79, 81 (9th Cir. 2003) ("It is the function and responsibility of the ALJ to weigh the evidence . . . ." (citing *Duhagon v. Metro. Stevedore Co.*, 169 F.3d 615, 618 (9th Cir. 1999))); *Lockheed Shipbuilding v. Dir., Office of Workers Comp. Programs, U.S. Dep't of Labor*, 951 F.2d 1143, 1146 (9th Cir. 1991) ("[Courts'] task is not to reweigh the evidence, but only to determine if substantial evidence supports the ALJ's findings." (citation omitted)), and "recognize the need for additional medical evaluations," *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011); *see, e.g.*, *Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003) ("The ALJ has an affirmative responsibility to develop the record, particularly, as here, where the claimant is unrepresented."). *See generally Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Thus, the pertinent inquiry is whether the ALJ's error was inconsequential to the disability determination based on other post-Hearing evidence—and not based on the pre-Hearing evidence that the ALJ found was insufficient to render a decision.

In this case, the ALJ's errors were clearly not harmless. In the decision, the ALJ relied on the April 2015 Test Results at step three of the sequential evaluation process to find that Plaintiff's impairments did not "meet[] or medically equal[] the severity" of the listed impairment under "Section 3.02" relating to "chronic pulmonary insufficiency." (*See* AR 25 & 27.) The ALJ did not reference any other additional post-Hearing test results that would render the ALJ's errant reliance on the April 2015 Test Results inconsequential to this determination. (*See* AR 25–29.) If the ALJ had discharged the duty to fully develop the record by ordering additional testing on this issue, that testing may have yielded results that would have altered the step-three determination regarding whether Plaintiff's impairments or combination of impairments meet or medically equal the severity of a listed impairment—in particular, the impairment provided in Section 3.02(A). *See generally* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02(A) (describing the "[c]hronic obstructive pulmonary disease" impairment, which is determined based on "FEV[1]" values "corresponding to the person's height without shoes"). Of course, if the ALJ had determined based on these additional tests that Plaintiff's impairments met or medically were equal to the impairment

12

provided in Section 3.02(A), then Plaintiff would be "automatically presumed disabled." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Thus, the ALJ's ultimate disability determination could have changed if the ALJ had corrected the errors. *Cf. Garcia*, 768 F.3d at 933 (finding that the ALJ's error in failing to develop the record was not harmless because the claimant's impairments may have met a listing if the ALJ had requested additional tests). The Court therefore finds that the ALJ's errors were not harmless, *see, e.g.*, *Molina*, 674 F.3d at 1115 (noting that an error is harmless "where it is inconsequential to the ultimate nondisability determination" (citations omitted)), and remand is warranted, *see, e.g.*, *Purtle v. Astrue*, No. EDCV 08-1023-JTL, 2009 WL 1464396, at *8 (C.D. Cal. May 26, 2009) (finding that remand was appropriate where the ALJ erred by failing "to develop the record").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion, (Doc. 17), DENIES Defendant's Motion, (Doc. 18), REVERSES the final decision of the Commissioner, and REMANDS this matter for further proceedings.

IT IS SO ORDERED.

Dated: **June 1, 2017**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

13